## Parsons *versus* Black.

1. The liens against a man's land do not prevent a sale of it by him, nor even a levy and advertisement of sale by the sheriff.
2. A conditional agreement to be executed through the instrumentality of the sheriff's levy, provided it shall sell for at least some certain sum, with a right to more, if the sheriff could get it, is not fraudulent.

ERROR to the Court of Common Pleas of *Perry county*.

The opinion of the court was delivered October 21, 1856, by

LOWRIE, J.—However numerous may be the liens against a man's land, the law does not prohibit him from selling it. The liens are an embarrassment to such a purpose, and may frustrate

[Parsons *v.* Black.]

it, but they do not forbid it.   If the lien creditors consent to a sale, or their claims are discharged by means of it, the law has no principle that interferes with it, unless it be shown to be a contrivance to hinder or defraud other creditors.   Though Parsons' land had been levied on by the sheriff, and was about to be sold, he had still a full right to sell it himself, though the circumstances might make it difficult for him to do so.   He might sell it subject to the liens, or with an agreement that the price be applied as far as necessary in discharge of the liens, and no creditors could prevent or object to it.   He did sell it, and there can be no pretence that he did it in fraud of creditors, for he was under constraint to sell, and seems to have bargained for the full value of it.   But the agreement to sell was a conditional one, to be executed through the instrumentality of the sheriff's levy.   It was not a sale for $2000, but a contract for at least that amount, and a right to more if the sheriff could get more ; and the amount was to be applied to all the judgments which Parsons could not procure to be released.   All this was plainly honest and proper, and did not and could not do any harm to any creditors.   It is supposed that by this arrangement, Parsons abandoned his duty of seeing that the property should sell for the highest price.   If this can be called a duty, it is certainly an imperfect one, for it is left to the direction of the party himself, and is neither defined nor enforced by the law.   And in fact, Parsons seems to have fulfilled it, for to all appearances, this contract was the result of an endeavor to secure the best possible price, so as to satisfy all lien creditors.   The creditors at large could have no voice in the matter, unless there was an actual fraud upon them.   But the learned judge of the Common Pleas seems to have misunderstood the verbal arrangement that Parsons should not procure bidders against Black at the sale. He had already made the best bargain that he could, and it was a plain moral duty that he should not do anything to prevent the purchaser from having the benefit of his contract, by seeking higher bids by puffers or otherwise.   Nor does it seem as a suspicious circumstance, that Parsons agreed to relieve the judgment of Echbert, or to get it satisfied, for this could not be done without Echbert's consent, and he was in this merely contracting to get that consent, which he did.   But even if that judgment was fraudulent, it could not affect the case, for then it was good for nothing, and had no rights, and there remained no lien creditors, and therefore none to object to the sale, unless on the ground of actual fraud upon them, which discretion would forbid Black to allege.

Judgment reversed and new trial awarded.